1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

| | |
|---|---|
| JOANN B. ROGGE, | NO.  C12-696-RSL-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

14    Plaintiff Joann B. Rogge appeals the final decision of the Commissioner of the Social

15 Security Administration ("Commissioner") which denied her applications for Disability

16 Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

17 after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18 the Court recommends that the Commissioner's decision be AFFIRMED.

19                    I.        FACTS AND PROCEDURAL HISTORY

20    On the date of the administrative hearing, plaintiff was a 52 year-old woman with a

21 high school diploma and an associate's degree in paralegal work.  Administrative Record

22 ("AR") at 40-41.  Her past work experience includes employment as an accounting

23 clerk/accounts receivable for a chiropractor's office, office clerk for business support services,

24 and personnel scheduler at a Texaco refinery.  AR at 46-48, 51, 54-55.  Plaintiff testified at the

REPORT AND RECOMMENDATION - 1

hearing that she was last gainfully employed in 2005 as a part-time office clerk for business support services.  AR at 45, 48, 51.  Plaintiff also currently receives $2,674 per month as a service-connected disability pension from the Veterans Administration, and testified that she would forego approximately thirty percent of these VA benefits if she returned to work, even on a part-time basis.  AR at 41-42.[1]

Plaintiff filed her first applications for disability insurance benefits and supplemental security income on March 2, 2005, alleging an onset date of February 22, 2005, based upon post-traumatic stress disorder ("PTSD").  AR at 68-72.  On June 25, 2007, following an administrative hearing before an ALJ, plaintiff was found disabled for the "closed period of disability commencing February 22, 2005 . . . [until plaintiff's] medical improvement on December 1, 2006."  AR at 72.  Specifically, the ALJ's disability finding was based upon "the severity of the claimant's depressive disorder," which the ALJ found met the clinical criteria of section 12.06 of the listings.  AR at 71.  Plaintiff, however, "acknowledged sufficient medical improvement to be able to return to work on a sustained basis" by December 1, 2006.  AR at 72.  The ALJ noted that "[i]ndeed, she has been working on a part-time basis" since that date. AR at 72.

On April 11, 2008, plaintiff filed another application for DIB, alleging an onset date of June 25, 2007, the date of the previous favorable decision.  AR at 124-31.  Plaintiff asserts that she is disabled due to PTSD, depression, anxiety, panic attacks, herniated disc, lumbar spine, cervical spine impairment, nightmares, and chronic insomnia.  AR at 124-31, 157-58. Specifically, in her Adult Function Report, plaintiff asserted that she "lacks ability to focus and

---

[1] Plaintiff testified that the receipt of social security disability benefits does not adversely impact the amount of VA benefits she receives.  AR at 44.

REPORT AND RECOMMENDATION - 2

1  concentrate for any length of time.  I cannot lift, bend, sit or walk for any length of time."  AR

2  at 158.

3       The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 81-

4  87, 89-93.  Plaintiff requested a hearing, which took place on May 4, 2010.  AR at 36-61.  At

5  the hearing, plaintiff testified that she did not actually return to work part-time in 2007, as

6  stated in the previous ALJ's decision, but has not worked since the beginning of 2005.  AR at

7  44-45, 48.  The ALJ found that "the claimant never returned to work" and therefore "the period

8  through December of 2006 is not at issue in this decision."  AR at 17.

9       On November 15, 2010, the ALJ issued a decision finding plaintiff not disabled and

10  denied benefits based on his finding that plaintiff could perform her past relevant work as an

11  office clerk or personnel scheduler.  AR at 17-29.  After reviewing additional evidence, the

12  Appeals Council denied plaintiff's request for review, making the ALJ's ruling the "final

13  decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  AR at 1-5.  On

14  April 20, 2012, plaintiff timely filed the present action challenging the Commissioner's

15  decision.  Dkt. 1.

16                  II.      JURISDICTION

17       Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

18  405(g) and 1383(c)(3).

19                III.      STANDARD OF REVIEW

20       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

21  social security benefits when the ALJ's findings are based on legal error or not supported by

22  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

23  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

24  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

1    *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

2    (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

3    medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

4    53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

5    whole, it may neither reweigh the evidence nor substitute its judgment for that of the

6    Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

7    susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

8    must be upheld.  *Id.*

9            The Court may direct an award of benefits where "the record has been fully developed

10    and further administrative proceedings would serve no useful purpose."  *McCartey v.*

11    *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

12    (9th Cir. 1996)).  The Court may find that this occurs when:

13            (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
        claimant's evidence; (2) there are no outstanding issues that must be resolved

14        before a determination of disability can be made; and (3) it is clear from the
        record that the ALJ would be required to find the claimant disabled if he

15        considered the claimant's evidence.

16    *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

17    erroneously rejected evidence may be credited when all three elements are met).

18                              IV.    EVALUATING DISABILITY

19            As the claimant, Ms. Rogge bears the burden of proving that she is disabled within the

20    meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

21    Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

22    any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

23    expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

24    423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

REPORT AND RECOMMENDATION - 4

1    are of such severity that she is unable to do her previous work, and cannot, considering her age,

2    education, and work experience, engage in any other substantial gainful activity existing in the

3    national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

4    99 (9th Cir. 1999).

5            The Commissioner has established a five step sequential evaluation process for

6    determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

7    404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

8    step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

9    any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

10   one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

11   §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the

12   Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

13   or more medically severe impairments, or combination of impairments, that limit her physical

14   or mental ability to do basic work activities.  If the claimant does not have such impairments,

15   she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

16   impairment, the Commissioner moves to step three to determine whether the impairment meets

17   or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

18   416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

19   twelve-month duration requirement is disabled.  *Id.*

20           When the claimant's impairment neither meets nor equals one of the impairments listed

21   in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

22   _____

23           [2] Substantial gainful activity is work activity that is both substantial, i.e., involves
     significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §

24   404.1572.

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.      DECISION BELOW

On September 23, 2010, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2.    The claimant has not engaged in substantial gainful activity since June 25, 2007, the alleged onset date.

3.    The claimant has the following severe impairments: lumbar facet arthropathy, cervical disc space stenosis, obesity, and anxiety disorder.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), in that she is able to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday, and to stand and/or walk for 6 hours in an 8-hour workday, with no limitations with regard to pushing or  pulling the above amounts. The claimant is able to understand, remember, and carry out simple 2 to 3 step and some more detailed or complex instructions, as required of jobs classified at a level of SVP 1and 2 or unskilled and also some jobs at the SVP 3 and 4 semiskilled level of work.  The claimant would have an average ability to perform sustained work

REPORT AND RECOMMENDATION - 6

activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absences.  The claimant is able to make judgments on simple and some detailed or complex work-related decisions; respond appropriately to supervision, co-workers; and deal with changes all within a stable work environment

6.      The claimant is capable of performing past relevant work as an office clerk or personnel scheduler.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.      The claimant has not been under a disability, as defined in the Social Security Act, from June 25, 2007, through the date of this decision.

AR at 19-29.

## VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ err in evaluating the medical opinion of Dr. Parlatore?

2.      Did the ALJ err in evaluating the other source opinion of Nurse Harrington?

3.      Did the ALJ err in assessing plaintiff's residual functional capacity?

Dkt. 13 at 1; Dkt. 14 at 2.

## VII.     DISCUSSION

A.      The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

1.      *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

*Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. *Dr. Parlatore*

Anselm Parlatore, M.D., completed a consultative psychiatric evaluation of the plaintiff in July 2008. AR at 396-400. Based upon plaintiff's self-report, Dr. Parlatore found that plaintiff has experienced several significant traumas during her lifetime, and "[h]er depression is manifested by dysthymia, apathy, anhedonia, and anergia but mostly by PTSD symptoms." AR at 398. Dr. Parlatore noted that plaintiff "has been in outpatient counseling pretty steadily since the age of 35 and she is on Wellbutrin." AR at 399. On cognitive exam, plaintiff "was totally intact to memory, concentration, fund of information and abstraction[.]" AR at 399. For example, plaintiff "remembered 4 out of 4 objects, was able to do serial 7's, spell the word 'world' forward and backward, do digit span and retention, abstract proverbs, discuss current events like the price of oil, she knew the president, the governor and the geography of the state of Washington and she had a very good fund of information and excellent insight." AR at 399. However, Dr. Parlatore considered plaintiff "still quite symptomatic with a number of classic symptoms of Post-Traumatic Stress Disorder along with chronic neck and back problems." AR at 400. Dr. Parlatore opined that plaintiff's "psychiatric symptoms render her markedly impaired in terms of stress, focus, concentration, pace and persistence although they have not affected her intellectually. They have affected her to a marked degree in terms of her ability to carry out specific tasks in a timely and consistent manner and markedly in terms of her interaction with others mostly male authority figures in the world place." AR at 400. Thus, Dr. Parlatore recommended that plaintiff "continue in therapy and counseling and appropriate medication." AR at 400.

As mentioned above, the ALJ's RFC assessment indicated that plaintiff was "able to understand, remember, and carry out simple 2 to 3 step and some more detailed or complex instructions, as required for jobs classified at a level of SVP 1 and 2 or unskilled and also some jobs at the SVP 3 and 4 semiskilled level of work.  The claimant would have an average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis . . . within the customary tolerances of employers rules regarding sick leave and absences."  AR at 20-21.  Furthermore, the ALJ found that plaintiff "able to make judgments on simple and some detailed or complex work-related decisions; respond appropriately to supervision, co-workers; and deal with changes all within a stable work environment."  AR at 21.

With respect to Dr. Parlatore's opinion, the ALJ noted that Dr. Parlatore assigned a GAF score of 48, which is "associated with serious symptoms or a serious impairment in social, occupational, or school functioning."  AR at 27.[3]  The ALJ summarized Dr. Parlatore's findings, but gave his opinion "very little weight in my analysis because the limitations alleged were not internally consistent with his evaluation, nor were they consistent with the medical evidence of record as a whole."  AR at 28.  For example, the ALJ noted that "when discussing the claimant's performance on mental status examination, the doctor found the claimant 'totally intact' to memory and concentration.  But as noted, in the medical source statement

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).  A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job.  *Id.*

portion of his report, he claimed she was markedly impaired in terms of stress, focus, concentration, pace, and persistence . . . [and] that the claimant's symptoms had affected her to a marked degree in terms of her ability to carry out specific tasks in a timely and consistent manner." AR at 28. In addition, plaintiff performed extremely well on her mental status examination, and "the doctor made no mention of [the tests] being performed in anything other than a timely and consistent manner." AR at 28.

With respect to Dr. Parlatore's opinion that plaintiff is "markedly affected by her symptoms in terms of her interaction with others, mostly male authority figures in the workplace," the ALJ found that "this assertion is utterly unfounded in the medical evidence of record or specifically in the evaluation with Dr. Parlatore. I note that this clinician is a male, yet he noted no difficulty in the claimant's interaction with him." AR at 28. The ALJ also considered it "unlikely the claimant would feel comfortable traveling extensively to meet men, particularly by airplane, if she felt unable to interact with males or male authority figures. Such a conclusion might make sense, considering the claimant's trauma history, but it is simply not borne out in the medical evidence of record or in this particular evaluation." AR at 28.

Plaintiff contends that the ALJ should have given more weight to Dr. Parlatore's opinions. Dkt. 13 at 13. Plaintiff states that "[a]dmittedly, the 'picture' that is painted of Ms. Rogge's activities and lifestyle in the chart notes might initially lead one to believe that, in light of her travels, excessive spending, and apparently extensive social interaction with friends and dating partners, she must be capable of the demands of substantial gainful activity. That same record, however, shows that this woman experienced severe sexual trauma as a child and as an adult . . . and that on the basis of those underlying traumas and her present symptoms and behavior, her treating therapists as well as the state agency's psychiatrist all endorse the

REPORT AND RECOMMENDATION - 11

1    diagnosis of post-traumatic stress disorder[.]" *Id*. at 14 (citing AR at 290-96, 353, 362, 380,

2    396-98, 400, 478-85).  Plaintiff asserts that "all of these sources found that Ms. Rogge's

3    behavior, while superficially seeming to reflect a carefree and even irresponsible lifestyle, is

4    more accurately characterized as being impulsive, reckless, reflective of a co-dependent nature,

5    and actually 'unsafe,' and that despite that willful behavior and the obvious negative

6    consequences of it, she has limited insight into or awareness of her own condition[.]" *Id*.

7    (citing AR at 293-94, 400, 477-85, 540-45).  Thus, plaintiff contends that the ALJ erred by

8    "play[ing] the role of doctor" and reassessing the "raw clinical data in a manner wholly

9    different than that of qualified practitioners, and without the requisite foundation in medical

10   expertise." *Id*. at 15 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) (providing

11   that the ALJ erred by substituting his own judgment for that of a treating physician); *Day v.*

12   *Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (providing that an ALJ is forbidden from

13   making his own medical assessment beyond that demonstrated by the record)).

14            The Commissioner responds that plaintiff "provides no argument specific to the ALJ's

15   analysis of Dr. Parlatore's opinion."  Dkt. 14 at 5.  Rather, the plaintiff simply claims that "the

16   ALJ's proffered reasons for having rejected the opinions of Dr. Parlatore and nurse Harrington

17   were largely the same . . . that the 'medical evidence of record paints a different picture of the

18   claimant's functioning' and that the chart notes and consultative examination yield little if any

19   positive clinical findings." Dkt. 13 at 13-14 (citing AR at 27-28).  Because plaintiff makes no

20   specific argument as to how the ALJ erroneously evaluated Dr. Parlatore's opinion, the

21   Commissioner argues that plaintiff's assertion of error should be denied.  *See id*. at 5.  In any

22   event, the Commissioner claims that the ALJ provided several valid reasons for affording

23   "very little weight" to Dr. Parlatore's opinion.  For example, "contradictions between a

24   doctor's opinion and his clinical notes and observations are valid reasons not to rely on that

REPORT AND RECOMMENDATION - 12

doctor's opinion," and "an ALJ may also reject medical opinions that are conclusory and contradicted by the rest of the evidence." *Id*. at 5-6.

The ALJ did not err in evaluating Dr. Parlatore's opinion. Rather, the ALJ provided several specific and legitimate reasons for affording little weight to Dr. Parlatore's opinion, and these reasons are supported by substantial evidence in the record. As discussed above, the ALJ found that Dr. Parlatore's conclusion that plaintiff suffered from marked limitations to be (1) inconsistent with his own findings on mental examination, and (2) inconsistent with the other medical evidence of record. The Court agrees.

Although plaintiff performed very well on her mental status exam, and Dr. Parlatore acknowledged that her memory and concentration were "totally intact" and her symptoms did not affect her "intellectually," Dr. Parlatore concluded – without further explanation – that she was markedly limited with respect to stress, focus, concentration, pace, persistence, and ability to carry out specific tasks in a timely and consistent manner. Similarly, plaintiff did not have any difficulty interacting with Dr. Parlatore during the examination, although he is male and may have been perceived by the plaintiff as an "authority figure" in the examination context. The ALJ could reasonably conclude that Dr. Parlatore's opinion was inconsistent with his clinical notes and observations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that a discrepancy between a doctor's opinion and clinical notes "is a clear and convincing reason for not relying on the doctor's opinion[.]").

The ALJ's conclusion that Dr. Parlatore's opinion is also inconsistent with the other medical evidence of record is specific, legitimate, and supported by substantial evidence. For example, in addition to plaintiff's apparent ease during her examination with Dr. Parlatore, the ALJ found that plaintiff's extensive travel to meet men does not support Dr. Parlatore's conclusion that plaintiff finds it difficult to interact with males or male authority figures. AR

at 28.  As noted above, plaintiff argues that her high level of activity and social functioning

does not mean "she must be capable of the demands of substantial gainful activities," but

should actually be construed as "unsafe" behavior that is consistent with her claimed

limitations.  *Id.*   However, where there is more than one rational interpretation of the evidence,

the Court must uphold the ALJ's interpretation.  *See Thomas*, 278 F.3d at 954.  As noted

above, even the plaintiff concedes that the record reflects frequent international "travel,

excessive spending, and apparently extensive social interaction with friends and dating

partners[.]"  Dkt. 13 at 14.  The ALJ's findings with respect to Dr. Parlatore's opinion are

rational interpretations of the evidence, and plaintiff's alternative interpretation is not sufficient

to undermine the ALJ's conclusion.

> B.    The ALJ Provided Germane Reasons for Affording Limited Weight to the
>        Opinion of Nurse Harrington

Rita Harrington, ARNP, described plaintiff's symptoms in a February 2008 letter to the

Department of Veteran's Affairs, and concluded that she was "totally disabled for at least one

year."  AR at 296.  Specifically, Ms. Harrington noted that plaintiff "has been treated in the

Mental Health Clinic for Post Traumatic Stress Disorder (PTSD) since April 6, 2004.  She has

also abused alcohol in the past . . . but there is currently no evidence of alcohol abuse."  AR at

296.  Ms. Harrington indicated that plaintiff "suffers from depressed mood, irritability, anxiety,

isolation, poor sleep, difficulty concentrating and making decisions.  She also has paranoia and

distrust of others, making it difficult to develop or maintain healthy relationships, especially

those persons in a supervisory position."  AR at 296.  As a result, Ms. Harrington opined that

plaintiff is "vulnerable to stress and she has difficulty adapting to change or in new situations.

For these reasons Ms. Rogge's disorder renders her totally disabled for at least one year."  AR

at 296.

REPORT AND RECOMMENDATION - 14

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Here, the ALJ noted that he considered Ms. Harrington's opinion, but gave it "only limited weight." AR at 27. First, the ALJ indicated that "symptoms alone do not lead inevitably to a finding of disability. I do not question the symptoms listed, but I challenge the assertion that the symptoms result in an inability to work in the claimant's case" because "the medial evidence of record paints a different picture of the claimant's functioning." AR at 27. Second, the ALJ found "ARNP Harrington's letter to be inconsistent with her treatment notes. Even when the claimant was experiencing significant situational stressors, this provider consistently reported the claimant had eye contact during the appointment, with good humor. Her speech was spontaneous and of regular rate and volume. Her mood was usually euthymic, her affect full range. The claimant's thoughts were organized, and her thought content contained no psychosis and no suicidal or homicidal ideation." AR at 27. In addition, the

1    letter was "contrary to the GAF score of 65 assessed in the same month of the letter . . . as well

2    as a score of 68 in March of 2009.  These scores are in the range associated with some mild

3    symptoms or some difficulty in social, occupational, or school functioning, but show the

4    provider felt the claimant was generally functioning pretty well, with some meaningful

5    interpersonal relationships."  AR at 27.

6        For the same reasons discussed above with respect to Dr. Parlatore's opinion, plaintiff

7    contends that the ALJ should have given more weight to the February 2008 opinion of Ms.

8    Harrington.  Dkt. 13 at 13-15.  Plaintiff also asserts that "the ALJ seems to have been caught

9    up in judging Ms. Rogge's behavior by reference to solely non-medical criteria, even going so

10   far as to claim that the nurse's examination findings of good eye contact, good humor,

11   spontaneous speech, euthymic mood, and organized thoughts were inconsistent with her

12   endorsement of disability[.]"  *Id.* at 14 (citing AR at 27).

13       The Commissioner responds that the ALJ clearly met his burden of providing germane

14   reasons to reject Ms. Harrington's opinion, as Ms. Harrington is not an "acceptable medical

15   source."  Dkt. 14 at 7 (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v.

16   Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010)).  The Commissioner asserts that

17   "inconsistency between the medical evidence and an other source's opinion is a germane

18   reason to reject that opinion."  *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.

19   2005)).  Thus, the Commissioner argues that, contrary to plaintiff's contention that the ALJ

20   erred by relying on "non-medical evidence" such as plaintiff's "eye contact, humor, speech,

21   and mood" during her examinations, "in fact, psychiatric signs such as behavior, mood,

22   memory, orientation, development, or perception constitute medical evidence that the

23   Commissioner must consider."  *Id.* at 9 (citing 20 C.F.R. § 404.1528(b), 416.928(b)).  The

24   Commissioner contends that the ALJ properly found that plaintiff's behavior during her

REPORT AND RECOMMENDATION - 16

examinations, as well as the GAF scores reflected in Ms. Harrington's treatment notes, were

inconsistent with Ms. Harrington's opinion that plaintiff was "totally disabled."  For example,

Ms. Harrington's treatment notes reflected GAF scores of 65 in February 2008 "near the time

she issued her opinion" and an even higher GAF score of 68 one year later.  *Id*. at 8 (citing AR

at 451-52, 469).

The ALJ properly provided several germane reasons for discounting Ms. Harrington's

opinion.  Specifically, although Ms. Harrington's treatment notes reflect a diagnosis of PTSD

and the same symptoms mentioned in her February 14, 2008 letter to the Department of

Veteran's Affairs, her treatment notes do not reflect a level of severity and limitations in

functioning that support Ms. Harrington's conclusion that plaintiff is "totally disabled for at

least one year."  AR at 296.  For example, on February 13, 2008, the day before her letter to

the VA, Ms. Harrington assessed plaintiff's GAF at 65, reflecting only mild symptoms.  AR at

469.  Plaintiff, however, does not address Ms. Harrington's treatment notes, or her GAF score

assessments, in her brief.

Finally, even if the Court were to accept plaintiff's argument that the ALJ placed undue

weight on plaintiff's "eye contact, humor, speech, and mood" during her examinations,

plaintiff does not indicate why any of the ALJ's other reasons for affording little weight to Ms.

Harrington's opinion were incorrect.  Inconsistency with the medical evidence, as well as the

clinician's own treatment notes, were legitimate and germane reasons for the ALJ to reject Ms.

Harrington's opinion.  Thus, the ALJ did not err in assessing Ms. Harrington's opinion.

C.     The ALJ Did Not Err in Assessing Plaintiff's RFC

Finally, plaintiff asserts in a conclusory fashion that the ALJ erred by assessing

plaintiff's RFC without reference to "the 'moderate' limitations in ten areas of mental function

endorsed by the non-examining state agency review psychologist," Vincent Gollogly, Ph.D.

1    Dkt. 13 at 15.  Plaintiff asserts that "by credit[ing] no more than a limitation to simple, three-

2    step commands and more than 'some' work-related decisionmaking and judgment," the ALJ

3    adopted an RFC that was "not based on the professional inferences of any medical source but

4    were wholly crafted by the ALJ himself."  *Id.* (citing AR at 20-21).

5         The Commissioner responds that the ALJ properly weighed the medical opinions, and

6    therefore plaintiff's conclusory assertion that the RFC is erroneous must fail.  Dkt. 14 at 9.

7    With respect to Dr. Gollogly's opinion, the Commissioner asserts that plaintiff has "once again

8    [failed to] provide any specific argument to support or even establish any assertion of error."

9    *Id*. at 10.  In addition, the Commissioner contends that "this Court has held that moderate

10   limitations in the medical form at issue [the Mental Residual Functional Capacity Assessment

11   (the "MRFCA"] do not represent the doctor's opinion about a claimant's functional limitations.

12   *Id.* (citing AR at 403).  Specifically, the moderate findings at issue in Section I of the MRFCA

13   form reflect "part of a checklist analysis to ensure doctors considered all aspects of a

14   claimant's mental functioning; these findings do not constitute the doctors' description of a

15   claimant's actual limitations," which are "described at the end of the MRFCA in Section III."

16   *Id*.  The Commissioner claims that the ALJ's RFC assessment in this case adequately included

17   the limitations identified in the narrative portion of Dr. Gollogly's MRFCA.  *See id.*

18        The Commissioner is correct.  Although plaintiff appears to be referencing moderate

19   limitations identified in Section I of the MRFCA completed by Dr. Gollogly, an ALJ properly

20   focuses on the narrative portion of the MRFCA form, rather than check boxes on the form.

21   *See* Program Operations Manual System (POMS) DI 25020.010 at B.1.  Here, the ALJ

22   incorporated Dr. Gollogly's conclusion in the narrative portion of the MRFCA form that

23   plaintiff could "understand, remember, and carry out simple and complex tasks," and was "able

24   to sustain an ordinary routine and make decisions" into his assessment of plaintiff's RFC.  AR

REPORT AND RECOMMENDATION - 18

at 20-21, 405.  Thus, plaintiff's assertion that the ALJ's RFC assessment in this case was

"wholly crafted by the ALJ himself," and failed to incorporate Dr. Gollogly's findings, lacks

merit.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be

AFFIRMED, and this matter be dismissed with prejudice.  A proposed order accompanies this

Report and Recommendation.

DATED this 3rd day of January, 2013

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19